IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANGEL S.,[1]                                           Case No. 6:24-cv-00793-SB

                    Plaintiff,                          **OPINION AND ORDER**

            v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

 Angel S. ("Plaintiff") filed this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction pursuant

to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the

Commissioner's decision and remands for further administrative proceedings.

///

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party.

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is so because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff was born in November 2003, making her eighteen years old on July 5, 2022, her application date.[2] (Tr. 15, 44.) Plaintiff is a high school graduate and has no relevant work experience. (*Id.* at 21.) In her application for benefits, Plaintiff alleged disability due to "specified neurodevelopment disorder, in utero cocaine and alcohol exposure, premature birth, generalized anxiety disorder, panic attacks, social anxiety, separation anxiety disorder, depression, [attention-deficit/hyperactivity disorder ("ADHD"), and] learning disorder with impairment in reading." (*Id.* at 44.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on February 28, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 50, 57, 78.) Plaintiff and a vocational expert ("VE") testified at an administrative hearing held on November 16, 2023. (*Id.* at 29-42.) On December 5, 2023, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 15-22.) On March 18, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of the ALJ's decision.

### II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which [s]he filed h[er] application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-22.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 5, 2022, her application date. (*Id.* at 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "generalized anxiety disorder; specified neurodevelopmental disorder (associated with fetal exposure to amphetamine type substance); and ADHD[.]" (*Id.*) At step three, the ALJ

concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 18.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to certain non-exertional limitations. (*Id.* at 19.) Specifically, the ALJ found that Plaintiff is limited to "simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions, few workplace changes, and only occasional interaction with the public, co-workers, and supervisors." (*Id.*) At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 21.) At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as marker, marker II, and floor waxer. (*Id.* at 21-22.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred in three ways. First, Plaintiff argues that the ALJ failed to evaluate the medical opinion of Christopher Corbett, Psy.D. ("Dr. Corbett"). (Pl.'s Br. at 3-12, ECF No. 10.) Second, Plaintiff alleges that the ALJ failed to identify specific, clear, and convincing reasons supported by substantial evidence in the record to discount Plaintiff's symptom testimony. (*Id.* at 12-16.) Finally, Plaintiff argues that the ALJ improperly discounted the lay witness testimony of Monica S., Plaintiff's mother, and did not evaluate the lay witness testimony of Joyce Contreras-Leal, Plaintiff's vocational rehabilitation ("VR") counselor. (*Id.* at 16-18.)

## I.    MEDICAL OPINION EVIDENCE

Plaintiff first argues that the ALJ erred by not evaluating Dr. Corbett medical opinion. (*Id.* at 3.) Defendant acknowledges that the ALJ did not evaluate Dr. Corbett's opinion, but argues that (i) Dr. Corbett's report was not a medical opinion as defined by current regulations;

and (ii) the ALJ cited Dr. Corbett's clinical findings and addressed the part of his opinion that was reproduced in the reports of Plaintiff's therapist, Maria Sloan, LMFT ("Sloan"). (Def.'s Br. at 2-4, ECF No. 15.)

### A.    Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citation omitted). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b))).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from

other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

### B.    Analysis

The Court concludes that the ALJ committed harmful err by failing to evaluate Dr. Corbett's medical opinion.

In June 2021, the Benton County Developmental Diversity Program referred Plaintiff to Dr. Corbett for a neuropsychological evaluation. (Tr. 541.) Dr. Corbett formed his opinion based on a clinical interview and results from several psychometric tests including: the Montreal

Cognitive Assessment, the Wechsler Adult Intelligence Scale – Fourth Edition, the Woodcock-Johnson IV Tests of Achievement, the Conners' Continuous Performance Test Third Edition, and the Adaptive Behavior Assessment System – Third Edition. (*Id.*)

At the evaluation, Dr. Corbett observed that Plaintiff became anxious when the evaluation started, but she seemed to "warm up" as the evaluation progressed and gradually appeared more comfortable with the process. (*Id.* at 543.) Dr. Corbett noted that Plaintiff appeared easily distracted and was looking around the room a lot during the evaluation. (*Id.*) When prompted to talk about her social, emotional, and academic struggles, Plaintiff became "easily tearful." (*Id.* at 542.) The results of Plaintiff's tests were considered to be a valid and reliable representation of Plaintiff's ability, despite her appearing to be hesitant and unsure of herself during the testing. (*Id.* at 544.)

Dr. Corbett concluded that Plaintiff experiences overwhelming feelings of anxiety which make her unable to function independently in most situations. (*Id.* at 549.) Dr Corbett explained that Plaintiff relies heavily on her parents to meet her daily needs and she feels helpless to make changes. (*Id.*) Dr. Corbett recommended that Plaintiff participate in frequent mental health therapy to help her understand her anxiety and learn positive coping techniques. (*Id.*) Dr. Corbett also recommended that Plaintiff seek treatment from a psychiatrist to help her find a "medication regime that takes into account her in utero exposure to drugs." (*Id.*) Dr. Corbett concluded that Plaintiff was unable to function independently at the time of the evaluation as the result of deficits in social skills and adaptive functioning:

> [Plaintiff] has struggled to function independently and she relies on her parents to care for her daily needs. The results of the Adaptive functioning test showed that she requires constant support and that she is unable to function independently at this time. She struggles with social skills and she does not feel capable to make plans or care for her own daily needs. Her deficits in adaptive functioning appear to be caused and exacerbated by her overwhelming anxiety, limited attention and

poor self-worth. It is very likely that her anxiety and limited adaptive functioning skills are directly associated with her in utero exposure to methamphetamine and cocaine. She is unable to perform substantial and gainful employment activities without a highly supported environment at this time. She seems to have the intelligence and skills to function independently but her overwhelming anxiety causes her to feel helpless and severely limits her functional abilities. It is my professional opinion that she will not be able to work or live independently for the next few years.

(*Id.* at 548-49.)

The ALJ did not directly discuss Dr. Corbett's opinion when evaluating the medical opinion evidence. (*See id.* at 20, discussing only the state agency psychological consultants' and Sloan's opinions).

Defendant argues that Dr. Corbett's neuropsychological evaluation did not qualify as a "medical opinion" under 20 C.F.R. § 416.913(a)(2), because he did not opine on Plaintiff's specific, work-related abilities. (Def.'s Br. at 2-4, citing 20 C.F.R. § 416.913(a)(2), which provides that "[m]edical opinions in adult claims are about impairment-related limitations and restrictions in: (A) Your ability to perform physical demands of work activities, . . . (B) Your ability to perform mental demands of work activities, . . . (C) Your ability to perform other demands of work, . . . and (D) Your ability to adapt to environmental conditions . . . ."). The Court finds that because Dr. Corbett's report included his opinion of Plaintiff's impairment-related limitations and restrictions (*see* Tr. 539-50), it qualified as a medical opinion which the ALJ was required to evaluate.[3] Accordingly, the ALJ erred by not evaluating Dr. Corbett's medical opinion. *See Jason R. T. v. Comm'r of Soc. Sec. Admin.*, No. 1:24-cv-00446-DKG, 2025 WL 2306039, at *4 (D. Idaho Aug. 11, 2025) (rejecting the Commissioner's argument that a

---

[3] Plaintiff correctly points out in her reply that the ALJ evaluated Dr. Corbett's opinion (albeit misattributed to Sloan) in the medical opinion section and made no finding that Dr. Corbett's opinion did not qualify as a medical opinion. (*See* Pl.'s Reply at 2, ECF No. 16.)

psychologist's "assessment was not a 'medical opinion' of Plaintiff's work-related functional limitations and, therefore, the ALJ was not required to evaluate it as an opinion" and finding that "the ALJ harmfully erred in failing to evaluate the persuasiveness of [the psychologist's] assessment as a medical opinion, or, at the very least, failing to provide a legitimate reason for not doing so"); *Anna C. v. O'Malley*, 734 F. Supp. 3d 1123, 1132 (D. Or. 2024) (rejecting the same argument that the Commissioner presents here and finding that "the detail in which [the neuropsychologist] documented Plaintiff's mental impairments in relation to her functioning in various areas of life warrant her [neuropsychological] evaluation to be analyzed as a medical opinion"); *Alexa G. v. Comm'r of Soc. Sec.*, No. C24-5301-BAT, 2024 WL 4249532, at *4 (W.D. Wash. Sept. 20, 2024) ("The Commissioner also argues the ALJ did not err because the ALJ is not even required to provide 'any analysis about how we considered such evidence in our determination or decision.' The ALJ is required to assess all relevant medical opinions. [The] neuropsychological examination and opinion is a medical opinion, and clearly relevant to Plaintiff's mental functional abilities." (first citing 20 C.F.R. § 416.920(3); then citing 20 C.F.R. § 416.920(c)(b); and then citing *Danielle K. v. Comm'r of Soc. Sec.*, No. C22-5063-BAT, 2022 WL 4244865, at *1 (W.D. Wash. Sept. 15, 2022))).

The Commissioner next asserts that the ALJ discussed Dr. Corbett's clinical findings in the ALJ's opinion. (*See* Def.'s Br. at 3, citing Tr. 17-18.) The Commissioner is correct that the ALJ cited the standardized test results from Dr. Corbett's report, as well as Dr. Corbett's report of Plaintiff's demeanor during her clinical interview and testing, when evaluating the severity of Plaintiff's impairments at steps two and three. (*See* Tr. 17-18, citing "Exhibit 2F.") However, the ALJ did not evaluate the persuasiveness of these findings, nor address the remainder of Dr. Corbett's report. (*See id.*)

The Commissioner also argues that the ALJ "effectively" evaluated Dr. Corbett's opinion by evaluating the persuasiveness of Sloan's opinion, which included "many" of Dr. Corbett's findings. (Def.'s Br. at 3.) Sloan's report included the entirety of Dr. Corbett's "summary" (*see* Tr. 640-41, citing the "summary of neuropsychological [e]valuation done by Chris Corbett, PsyD"), but the excerpt in Sloan's report included only one page of Dr. Corbett's eleven-page report (*see* Tr. 539-50). Although the ALJ also cited Dr. Corbett's findings in earlier pages of his opinion, it is impossible for the Court to determine whether the ALJ evaluated Dr. Corbett's opinion in its entirety or whether he would have evaluated the summary of Dr. Corbett's opinion differently its full context or if he had not misattributed the summary to Plaintiff's therapist.

For these reasons, the Court concludes that the ALJ's failure to address Dr. Corbett's medical opinion was not harmless error, and that remand is necessary to allow the ALJ to evaluate Dr. Corbett's report.

## II.     SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff argues that ALJ erred by failing to provide specific, clear, and convincing reasons for discounting mental health symptom testimony. (Pl.'s Br. at 12-16; *see also id.* at 14, asserting (incorrectly) that "the ALJ did not articulate any reasons to reject [her] testimony.") The Commissioner responds that the ALJ agreed that Plaintiff had significant mental health symptoms and therefore restricted her to simple, routine, and repetitive tasks involving only simple work-related decisions, few workplace changes, no fast-paced production, and only occasional and casual contact with coworkers and the public. (Def.'s Br. at 5.) The Commissioner further argues that the ALJ "reasonably concluded that Plaintiff's more extreme allegations were contradicted by Plaintiff's clinical findings, activities, improved functioning with medication, and test scores." (*Id.* at 5-8, citing Tr. 18-20.)

///

PAGE 11 – OPINION AND ORDER

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 20, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

#### 1.    Activities of Daily Living

The ALJ discounted Plaintiff's testimony about her debilitating anxiety based in part on her daily activities, including her ability to attend classes at a local community college and to attend a car show. (*See* Tr. 20, "[T]he claimant continues to attend classes at a local community college—suggesting she can tolerate occasional social interaction with the public."; *see also id.*,

"At hearing, the claimant acknowledged she could function appropriately in public venues that were not overly crowded. She specifically cited attending a car show where there were no 'giant' crowds of people.")

An ALJ may discount a claimant's symptom testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination"); *Garrison*, 759 F.3d at 1016 (finding that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). Notably, however, there must be a meaningful inconsistency between the claimant's daily activities and symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the claimant's symptom testimony, and explaining that the claimant's "limited daily activities were not meaningfully inconsistent with her symptom testimony").

The Court finds that Plaintiff's ability to attend community college was a clear and convincing reason to discount her allegations of extreme anxiety, social anxiety, and learning disorders. *See, e.g., Kimberly S. v. Berryhill*, No. 3:17-cv-1788-JR, 2018 WL 6424765, at *1 (D. Or. Nov. 19, 2018) ("The ALJ appropriately determined that [the] plaintiff's community college attendance provided a clear and convincing reason to discount her symptom testimony." (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008))), *report and recommendation adopted*, 2022 WL 21778328 (S.D. Cal. Jan. 18, 2022); *Jackson v. Berryhill*, No. C17-5719 RAJ, 2018 WL 3344740, at *2 (W.D. Wash. July 6, 2018) ("The Court concludes

the ALJ did not err in discounting [the] plaintiff's testimony on the ground that it was inconsistent with her [ability to attend community college]." (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005))); *Clough v. Comm'r Soc. Sec. Admin.*, No. 6:15-cv-00140-MA, 2015 WL 8751857, at *5 (D. Or. Dec. 14, 2015) ("In the decision, the ALJ discounted [the] plaintiff's credibility because she was able to attend classes at community college for two terms . . . . The ALJ found [the] plaintiff's ability to perform well, despite her stress and anxiety, undermines her allegations that she is unable to work in any capacity. I agree. As the ALJ discussed, [the] plaintiff's ability to attend school is inconsistent with her allegations of disabling social phobia.") (simplified).

The Court also finds that Plaintiff's ability to attend car shows was a clear and convincing reason to discount her allegations of feeling overwhelmed by large groups of people and unfamiliar places. *See, e.g.*, *Laurie R. v. Comm'r of Soc. Sec.*, No. C19-6126-MLP, 2020 WL 5988495, at *4 (W.D. Wash. Oct. 9, 2020) (finding that a "[c]onflict with Plaintiff's activities was a clear and convincing reason to discount testimony of social limitations" where the claimant testified she is "not good with big crowds" because she gets "very nervous" but the claimant attended a venue with large crowds (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007))); *Elizabeth D. v. Kijakazi*, No. 6:20-cv-2079-SI, 2022 WL 986482, at *7 (D. Or. Apr. 1, 2022) ("[Plaintiff's] activities contradict Plaintiff's claims that her anxiety when interacting with others or among crowds was debilitating, and thus constitute a clear and convincing reason to discount Plaintiff's testimony as to her mental limitations.").

These specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony were supported by substantial evidence in the record. (*See, e.g.*, Tr. 34, Plaintiff testified at her hearing that she was attending a local community college, to which she drives

herself and takes general education and art classes and attends math club; *id.* at 36, Plaintiff
testified that she attends car shows in the summer).

The Court finds that the inconsistencies between Plaintiff's allegations of extreme
limitations and her activities of daily living was a clear and convincing reason to discount her
symptom testimony, and was supported by substantial evidence in the record. Accordingly, the
Court concludes that the ALJ did not err in evaluating Plaintiff's symptom testimony.

## 2.    Objective Medical Evidence

The ALJ also concluded that Plaintiff's allegations of debilitating anxiety, ADHD, and
learning disorders were inconsistent with her presentation in clinical settings, including her
performance on standardized tests. (*See* Tr. 20, "In a work setting involving limited social
requirements, it is likely the claimant would be able to maintain her composure. For instance, in
a clinical setting with a familiar treatment provider, the claimant was reportedly 'friendly' and
attentive with no observable impairment of thought for or content."; *see also id.*, "[Plaintiff's]
treatment provider acknowledged the claimant could comprehend written material and write
sentences appropriately, as well as demonstrate 'good' basic math skills. Her performance on
standardized testing was 'a little below grade level'—but not indicative of a specific learning
disorder.", citing Tr. 725.)

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant
factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*,
261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's
testimony as to subjective symptoms merely because they are unsupported by objective
evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81
F.3d 821, 834 (9th Cir. 1995)); *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the
Commissioner "will not reject your statements about the intensity and persistence of your pain or

other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Nevertheless, an ALJ may discount a claimant's testimony where it is inconsistent with the objective medical evidence. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (affirming the ALJ's discounting of the claimant's testimony, in part, because it conflicted with the objective evidence); 20 C.F.R. § 404.1529(c)(4) (explaining that ALJs "consider whether there are any inconsistencies in the evidence and the extent to which there are conflicts between [a claimant's] statements and the rest of the evidence, including your history, the [medical] signs and laboratory findings, and statements by [] medical sources"); *id.* § 416.929(c)(4) (same).

The Court finds that the ALJ properly considered Plaintiff's clinical presentations and test scores to discount Plaintiff's testimony about her extreme anxiety, ADHD, and learning disorders. *See, e.g., Muntz v. Kijakazi*, No. 22-35174, 2022 WL 17484332, at *1 (9th Cir. Dec. 7, 2022) (finding that "the ALJ gave specific, clear, and convincing reasons for discounting [the claimant's] subjective testimony[,]" including discounting the claimant's "alleged cognitive impairment" by "permissibly observ[ing] that none of [the claimant]'s 'providers reported any impairment in memory, attention, or concentration during visits, and when other providers tested these areas, they were found to be normal'" and the claimant "also appeared oriented and alert at visits") (citations omitted); *Grace G. v. Kijakazi*, No. 20-cv-1233-AJB-DEB, 2021 WL 6126396, at *7 (S.D. Cal. Dec. 28, 2021) ("The ALJ, therefore, properly considered Plaintiff's 'presentation and clinical observations at appointments' to discount Plaintiff's subjective symptom testimony." (simplified) (citing *Carmickle*, 533 F.3d at 1161)).

The Court further finds that the ALJ's analysis was supported by substantial evidence in the record. (*See, e.g.*, Tr. 655, "[Plaintiff] presents as [f]riendly with a [c]ongruent affect. Overall

attentiveness to today's topic was [g]ood. . . . Impairment in thought form and content was [a]bsent."; *id.* at 701, noting that Plaintiff's mood, behavior, thought content, and judgment were normal; *see also id.* at 548, 613, 640, 714, 725, 741, 752, reporting that Plaintiff's "performance on [i]ntellectual testing showed that she has good verbal and spatial reasoning skills[, . . . ] understand situations [q]uickly[,] and she solves problems well through trial and error"; *id.* at 543, 548, 613, 640, 714, 725, "Her performance on the [a]chievement testing showed that her academic skills are mostly in the [a]verage range. . . . She comprehends written material and writes sentences appropriately. She showed good basic math skills but she avoided trying most of the more complex math equations and she made simple calculation errors on math equations with multiple steps. She applied math skills well to situations. Her overall performance on the Broad Achievement Clusters showed her performing academically a little below grade level, but within the range expected from her measured intelligence and is not indicative of a Specific Learning Disorder.")

For these reasons, the Court concludes that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony.

## III.    LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ erred by discounting the lay witness testimony provided by Plaintiff's mother, Monica S., and by failing to address the lay witness testimony of Plaintiff's VR counselor. (Pl.'s Br. at 17-18.) The Commissioner responds that ALJs are not required to address lay witness testimony under the new regulations. (Def.'s Br. at 8-9.) The Commissioner further argues that even if the ALJ was required to articulate how he evaluated the lay witness testimony, the ALJ properly discounted the testimony from Plaintiff's mother and was not

required to discuss the VR counselor's testimony because it "includes terms that are too vague to be vocationally useful, as well as Plaintiff's own preferences." (*Id.* at 9-10.)

### A.    Applicable Law

It remains "unsettled whether an ALJ is still required to consider lay witness evidence under the revised regulations." *Apple v. Bisignano*, No. 24-307, 2025 WL 1525314, at *3 (9th Cir. May 29, 2025) (quoting *Crummett v. King*, No. 23-3668, 2025 WL 470890, at *2 (9th Cir. Feb. 12, 2025)); *see also Wilson v. O'Malley*, No. 23-35463, 2024 WL 2103268, at *2 (9th Cir. May 10, 2024) (recognizing that the Ninth Circuit has "not yet addressed whether an ALJ is required to provide germane reasons for discounting lay witnesses under the new regulations"). "[A]ssuming that an ALJ must consider such evidence, '[a]n ALJ need only give germane reasons for discrediting the testimony of lay witnesses.'" *Apple*, 2025 WL 1525314, at *3 (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)).

### B.    Analysis

The Court finds that if the ALJ was required to provide germane reasons for rejecting the lay witness testimony, the ALJ provided germane reasons to discount the mother's testimony and his failure to address the VR counselor's testimony was harmless error.

Plaintiff's mother reported that Plaintiff had impaired social skills, severe social anxiety, and a limited ability for reading, writing, and mathematics. (Tr. 194, 198.) She explained that Plaintiff does not understand time or time management, and has a random sleep pattern. (*Id.* at 194-95.) Plaintiff's mother reported that Plaintiff does not prepare meals or do household chores, and needs reminders to attend to her personal care including bathing, changing her clothes, and brushing her teeth. (*Id.* at 195-96.) Plaintiff's mother reported that Plaintiff's mental health conditions cause her to lose focus and not finish things she starts. (Tr. 199.) Plaintiff's mother explained that Plaintiff often cries and "shuts down" in response to stress, changes in her routine

cause stress, and she has problems getting along with others and talking to authority figures. (*Id.* at 199-200.)

Plaintiff's VR counselor reported that Plaintiff requires workplace accommodations:

Based on the information provided regarding [Plaintiff's] impairments, she will need to work in a calm, non-hostile environment with supportive and patient employees and managers. She would like to be able to have flexibility and accommodations, such as having repetitive tasks, checklists, and while learning time-management skills. [Plaintiff] will need customized job placement services, initial job coaching, and help with interviewing.

(Tr. 321.)

The ALJ addressed the lay witness testimony by stating that he "reviewed the lay witness observations reported by [Plaintiff's] mother" and her "observations generally mirror [Plaintiff's] own allegations – which are not entirely consistent with the clinical observations." (Tr. 20.) The ALJ did not address the lay witness testimony from Plaintiff's VR counselor.

The Court concluded above that the ALJ provided clear and convincing reasons to discount Plaintiff's symptom testimony, and finds that the ALJ's reasons for discounting the similar testimony of Plaintiff's mother were germane. *See Smith v. Bisignano*, No. 24-5118, 2025 WL 2452374, at *2 (9th Cir. Aug. 26, 2025) ("We need not address whether the ALJ was required to explain how he evaluated lay witness testimony because any error would be harmless. The testimony of these lay witnesses was similar to [the claimant's] own testimony, and so the ALJ's reasonable decision to discount [the claimant's] testimony 'appl[ied] equally well' to the testimony of these lay witnesses." (citing *Molina*, 674 F.3d at 1117)); *Apple*, 2025 WL 1525314, at *3 ("[B]ecause the ALJ 'provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness] testimony.'" (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th

Cir. 2009))); *Burns v. Bisignano*, No. 24-4199, 2025 WL 1937448, at *2 (9th Cir. July 15, 2025)

("Because the ALJ gave clear and convincing reasons for discounting [the claimant's] subjective

symptom claims, those reasons apply with equal force to discounting the lay witness testimony,

which contained similar claims regarding [the claimant's] symptoms." (first citing *Valentine,* 574

F.3d at 694; and then citing *Molina*, 674 F.3d at 1117)); *Finnegan v. Bisignano*, No. 24-3131,

2025 WL 1911155, at *2 (9th Cir. July 11, 2025) ("[S]ince [the lay witness] testimony was

consistent with [the claimant]'s own testimony, the ALJ did not err in discounting it." (citing

*Molina*, 674 F.3d at 1117)).

      For the same reasons, the Court finds that even if the ALJ erred by failing to address the

VR counselor's opinion, any error was harmless because the counselor's opinion was based on

Plaintiff's input regarding her limitations. (*See* Tr. 315, noting that the VR counselor's report

was based on an intake appointment with Plaintiff and her parents; *id.* at 321, noting that the VR

counselor's opinion was "[b]ased on the information provided"); *see also Neal v. Astrue*, No.

1:11-3073-AA, 2012 WL 3779028, at *5 (D. Or. Aug. 29, 2012) ("Here, the ALJ's reasons for

discounting [the] plaintiff's credibility are equally applicable to the testimony and statements of[,

*inter alia*, a vocational rehabilitation specialist]" (citing *Valentine*, 574 F.3d at 694)); *see also*

*Oberg v. Colvin*, No. 6:13-cv-01004-SI, 2014 WL 3695609, at *7 (D. Or. July 24, 2014)

(holding that "the ALJ's failure to specifically address [the vocational rehabilitation counselor's]

testimony as to [the claimant's] physical limitations was harmless").

      The Court also agrees with the Commissioner that the ALJ was not required to address

the VR counselor's opinion to the extent it was vague and conclusory. *Cf. Briceno v. Berryhill*,

No. 6:16-cv-00737-MC, 2017 WL 6388958, at *4 (D. Or. Dec. 14, 2017) ("[The claimant]

alleges that the ALJ failed to offer germane reasons for rejecting [a vocational rehabilitation

counselor's] testimony. . . .The ALJ assigned 'little weight' to [the vocational rehabilitation counselor's] opinion because it was a 'conclusory statement on an issue reserved to the Commissioner.' This is a reasonable description and germane reason for discrediting [the vocational rehabilitation counselor]'s opinion.") (simplified).

For these reasons, the Court finds that the ALJ did not commit harmful error in evaluating the lay witness testimony.

## IV.    REMEDY

Plaintiff asks the Court to remand for an immediate award of benefits. (Pl.'s Br. at 19; Pl.'s Reply at 6.) The Commissioner responds that Plaintiff has not demonstrated harmful error and that, in any event, the Court should reject Plaintiff's request to remand for an award of benefits. (Def.'s Br. at 12.)

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to

remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

**B.     Analysis**

The Court finds that remand for further administrative proceedings is necessary to allow the ALJ to evaluate Dr. Corbett's medical opinion and resolve ambiguities in the record.

Specifically, Plaintiff did not challenge the ALJ's evaluation of the state agency psychological consultants' opinions, and those consultants "reviewed all available evidence in September 2022 and February 2023 before concluding the claimant could reasonably sustain 'simple routine tasks' in a setting involving 'occasional and casual contact' with co-workers and the public." (Tr. 20, finding the assessments to be "persuasive" and "reasonably consistent with the clinical observations"). The state agency psychological consultants' opinions were consistent with the ALJ's RFC, but contradicted by Dr. Corbett's medical opinion. Further administrative proceedings are necessary to allow the ALJ to evaluate Dr. Corbett's medical opinion, and revisit the other medical opinions and Plaintiff's RFC, if necessary. *See Harvey v. Kijakazi*, No. 22-15116, 2023 WL 21462, at *1 (9th Cir. Jan. 3, 2023) ("[B]ecause the ALJ overlooked the medical opinion at issue in the initial proceeding, remanding for further proceedings is appropriate to allow the ALJ to properly consider the evidence in the first instance."); *Megyesi v. Saul*, 773 F. App'x 914, 915 (9th Cir. 2019) ("Accordingly, we vacate and remand with instructions to the district court to remand to the ALJ for further proceedings. The ALJ should reassess the medical opinions, including addressing [the medical] opinion that was previously ignored and revisiting [the other medical] opinions.").

///

///

///

PAGE 22 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and

REMANDS this case for further administrative proceedings.

**IT IS SO ORDERED.**

DATED this 14th day of October, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge